ARDEN ENGINEERING CO., INC. *vs.* E. TURGEON CONSTRUCTION CO., INC.

FEBRUARY 25, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

JOSLIN, J. This action of assumpsit was heard by a justice of the superior court sitting without a jury and resulted in a decision for the plaintiff in the amount of $18,536.57. The case is here on the defendant's bill of exceptions, the only exceptions pressed being those to the decision and to an evidentiary ruling. Exceptions neither briefed nor argued are deemed to be waived.

The declaration is in three counts. The first count alleges that plaintiff had contracted with the state for the installation of heating and ventilating equipment in a building being constructed for the state by defendant as general contractor; that defendant's contract required it to provide

insurance against loss by fire or boiler explosion covering the interests of all prime contractors, including plaintiff, engaged in work on the project; that plaintiff's contract did not require it to carry that type of insurance; that a boiler explosion occurred; and that the damage resulting therefrom was repaired by plaintiff at defendant's written authorization and upon its promise to pay therefor, which payment has not been made.

The second count differs materially only in its failure to refer to an obligation of defendant to provide insurance coverage and alleges therein that defendant's promise to pay the cost of the repairs was in writing. The third count contains the common counts.

The defendant pleaded the general issue.

It appears from the evidence that both defendant and plaintiff contracted with the state, the former to construct certain new buildings at the Rhode Island College of Education in North Providence, and the latter to do the heating and ventilating work in connection with that construction. In each contract there was a provision that plaintiff should "be solely responsible for the heating system," and should "make good any damage *caused* by temporary use." (italics ours) Both plaintiff and defendant in their respective contracts were required to carry fire insurance with extended coverage "upon the entire structure on which the work of this contract is to be done * * *."

On January 26, 1958 after the boiler installed by plaintiff had become operational and while temporary heat was being supplied to the project, an explosion occurred in the boiler causing substantial damage to it as well as to the surrounding general area.

Thereafter several conferences took place attended by authorized representatives of each of the parties, their insurance agents, representatives of the state, and others, to discuss the restoration of temporary heat, maintenance of

building progress, and repair of the damage. At one of these conferences the insurance agent for defendant stated that for an additional premium a policy could be issued which would cover the loss which had already taken place. Such a policy was in fact issued, the state paying the premium thereon. Subsequent to its issuance the state's representative suggested to defendant that it instruct plaintiff to make the repairs, whereupon defendant wrote plaintiff as follows:

"February 10, 1958

"Arden Engineering Company
"60 Taylor Drive
"Rumford, Rhode Island
"Re: R. I. College of Education
Providence, R. I.

"Gentlemen:
"On the basis of verbal authorization received from the Division of Architecture and Engineering, you are hereby directed to proceed with the repairs to the boiler damaged on January 26, 1958 and any necessary repairs to Boiler #2.

"You will be required to submit an invoice in triplicate showing the cost of making these repairs, so that the bill can be forwarded to the insurance company.

"Please bear in mind that any work in connection with your contract for connecting up Boiler #2 is not to be included in this billing for repairs.

"Labor and material charges should be checked at least weekly with our superintendent and cost clerk at the site for verification to the insurance company.

"Very truly yours,
"E. TURGEON CONSTRUCTION CO., INC.
"By [signed] Edward P. Turgeon
"Edward P. Turgeon, Treasurer"

It further appears that at these conferences plaintiff's position was that it was not prepared to make repairs to the boiler unless so authorized by defendant and that it made the repairs in reliance upon its letter of February 10, 1958.

The trial justice found for plaintiff on the first two counts of its declaration, concluding that there was an implied contract obligating defendant to pay for the repairs. The defendant does not contend that the trial justice overlooked or misconceived any evidence, but bases its exceptions on errors of law.

It contends that there was a material variance between the pleadings and the proof, there being no evidence supportive of the allegation in the second count of a written *promise* to pay. The trial justice considered that allegation as surplusage which defendant says is error. Implicit in its argument, though not briefed, is a possible further contention that if no recovery can be had on the second count because of a failure of proof as to the promise to pay being in writing, then and in such instance recovery cannot be had on the first count because of a possible lack of evidence to support the allegation in that count that defendant was required to provide insurance coverage for damage resulting from a boiler explosion under its contract with the state.

The principle of variance does not require such rigorous adherence as to require proof of each allegation to the letter. Proof of the substance will suffice, and so long as the testimony substantially supports the allegations the variance is not material. *Menzoian* v. *Johnson,* 57 R. I. 196, 200. The instant case was tried by both parties on the issue of the legal consequences flowing from defendant's written authorization to plaintiff to repair the boiler. That authorization is annexed to the declaration and made a part of it.

The defendant did not ask for a bill of particulars seeking information as to the form, nature, or content of the written promise to pay declared upon in the second count. Nor can it be said, and indeed defendant does not claim, that it was either surprised or misled by the evidence offered by plaintiff or by its failure to offer testimony as to a writ-

ten promise. In these circumstances there is not that kind of material failure of proof as requires a finding that error inhered in the decision of the trial justice treating plaintiff's allegation of a written promise in the second count as surplusage. *D'Onofrio* v. *First National Stores, Inc.,* 68 R. I. 144, 147.

We now come to the basic questions. Under separate contracts with the state each party was performing certain work on the Rhode Island College of Education project. An explosion occurred in the boiler while it was being used to supply temporary heat. The plaintiff refused to make repairs unless directed to do so. Neither party could proceed expeditiously with its work unless the repairs were effected. The attempt to provide insurance coverage for the damage sustained after the occurrence of the explosion was successful to the extent that a policy was issued. The defendant directed plaintiff to make necessary repairs and to submit bills to it covering the cost. This was done, defendant neither objecting to the form of the bills nor denying liability for payment. The bills in due course were forwarded by defendant to the insurance carrier. After the work was completed and all the bills were in, plaintiff, at defendant's request, removed from those bills charges for profit. The first question is whether the trial justice was in error in finding an implied promise on the part of defendant to pay for the cost of repairs.

If defendant's direction to plaintiff to repair the boiler was made in such circumstances that plaintiff was warranted in assuming that defendant intended to pay therefor, then the law says an implied promise on defendant's part to pay may be inferred. *George Spalt & Sons, Inc.* v. *Maiello,* 48 R. I. 223, 226. Here the testimony is that plaintiff refused to make the repairs and that defendant directed it to do so. It was not unreasonable for plaintiff to believe that a direction to repair accompanied by a request to sub-

mit invoices and to check costs with defendant's superintendent constituted an implied promise to pay. That defendant may have believed that payment would ultimately be made by an insurance company under the policy issued subsequent to the explosion was of no concern to plaintiff.

The defendant must have realized that plaintiff would attach significance to the letter of February 10, 1958. It does not appear, nor does defendant suggest, that it was acting as agent for the insurance company. The statement that the bills would be forwarded to an insurance company did not compel a conclusion of the existence of a principal-agent relationship between defendant and the insurance compay nor did it prohibit a conclusion of an intention on the part of defendant to pay coupled with an anticipation by defendant that reimbursement or indemnity would come from the carrier.

The trial justice concluded from the evidence and the reasonable inferences therefrom an implied promise by defendant to pay upon which plaintiff reasonably relied when it repaired the explosion damage.

While this court may draw its own inferences from undisputed and uncontradicted evidence, *Santos* v. *Santos*, 80 R. I. 5, 10, the drawing of an inference as to a promise of payment was initially the function of the trier of facts, *George Spalt & Sons, Inc.* v. *Maiello, supra.* The trial justice's conclusion will be accepted by this court if the inference he drew was reasonable and this even though other equally reasonable inferences to the contrary might have been drawn. *Williams* v. *Rhode Island Hospital Trust Co.*, 88 R. I. 23, 38.

We cannot say that the trial justice on the evidence before him drew an unreasonable inference when he found defendant impliedly promised to pay plaintiff for its work. His conclusion must stand.

Assuming an implied promise to pay for the boiler repairs, the question becomes whether there was a sufficiency

of consideration to support that promise if plaintiff was then under a pre-existing contractual obligation or duty to the state to remedy the damage resulting from the explosion. On this question, which is one of first impression in this state, there is a diversity of opinion. The view urged by defendant and supported by the weight of authority draws no distinction between a three-party case where the new promise to pay additional compensation comes from a stranger to the original contract and a two-party case where that promise comes from the original promisor. There is an insufficiency of consideration, the courts adhering to the prevailing view say, since the performance or promise to perform does not involve a detriment to the promisee. In the minority view which is adopted by the American Law Institute, 1 Restatement, Contracts §84(d), p. 96 (1932), the two types of cases are distinguished, and consideration is found to support the promise of the third party not in privity generally on the ground that the promisor receives the benefit for which he bargained. Here that benefit was the reparation of the explosion damage without which performance by defendant of its obligation to the state would have been hindered. See 1 Williston, Contracts (3d ed.) §§130-131B; 1A Corbin, Contracts, §§175-178.

The plaintiff, however, contends that absent any evidence as to the cause of the boiler explosion, and the record is barren of any thereon, it was under no obligation to make repairs, its contract with the state requiring it only to "make good any damage *caused* by temporary use." (italics ours)

In our opinion so long as the cause of the explosion was subject to speculation, conjecture and guess, an inference that the explosion was not caused by the temporary use of the boiler is reasonable. Once having drawn that inference the pre-existing obligation of plaintiff disappears and the rule urged by defendant does not apply.

Moreover, causation being unresolved, plaintiff could, and in fact did, dispute its contractual liability to the state to

repair the damage. Weight is lent to the honesty and reasonableness of that dispute by the lack of any evidence that representatives of the state at the conferences preceding defendant's letter of February 10, 1958 made any demand on plaintiff to repair the damage. It is generally held that there is a sufficiency of consideration as long as the existence of a legal obligation on the part of the promisee or performer is doubtful or the subject of an honest and reasonable dispute. 1 Restatement, Contracts §76 (a), p. 83 (1932); *Bedrock Foundations, Inc.* v. *Geo. H. Brewster & Son, Inc.,* 31 N. J. 124; *Hicks* v. *Smith,* Tex. Civ. App., 330 S.W.2d 641; *Lee* v. *National Cylinder Gas Co.,* La. App., 58 So.2d 568; 1 Williston, Contracts (3d ed.) §130, p. 536; 1A Corbin, Contracts §187, p. 164. See also *Clark* v. *Summerfield Co.,* 40 R. I. 254, 260. Although the authorities upon which we rely involve two-party cases the reasoning adopted by those authorities applies with equal force to three-party cases. See *Thayer* v. *Brady,* 28 Wash.2d 767.

We come now to the defendant's final contention that it was error for the trial justice to have refused to allow inquiry of its treasurer as to whether, prior to the time of the insurance company's refusal to pay for the cost of repairing the boiler, any of the plaintiff's representatives had contended that the defendant was responsible for the damages caused by the explosion. Absent an offer of proof by the defendant of what it intended to prove by the question propounded if allowed, its exception is without merit. *D'Acchioli* v. *Cairo,* 87 R. I. 345; *Callan* v. *Peck,* 37 R. I. 227.

All of the defendant's exceptions briefed and argued are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Jacob J. Alprin, John A. Mutter,* for plaintiff.

*Higgins & Slattery, Eugene V. Higgins,* for defendant.